# Charles C. Craft, Plff. in Err., *v.* Samuel Phillips.

The defendant held four out of six notes given for the purchase money of real estate, and secured by a deed of trust of the real estate. The owner of the land sold it and three weeks after the sale obtained from the defendant a release of the land from the encumbrance of the trust deed. The release was, in general terms, for all the tract sold, and recited the sale made three weeks before. The plaintiff, who was the purchaser, claimed. that he did not know that the defendant held only four of the notes. The land was subsequently sold on judgments on the other two notes and the plaintiff was obliged to buy it in for his own protection. In an action on the case for deceit, by the purchaser against the defendant, the court. charged that if the jury found that the plaintiff was without notice that defendant did not hold all the notes and was without knowledge of facts. to put him upon inquiry, and trusted to the silence of the defendant, then plaintiff was entitled to recover. *Held,* not to be error.

.(Argued October 27, 1887. Decided January 3, 1888.)

October Term, 1887, No. 95, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the Common Pleas No. 2 of Allegheny County to review a judgment. in favor of the plaintiff in an action on the case for deceit. Affirmed.

The following facts appeared at the trial before WHITE, J.:

In 1875 C. C. Craft sold and conveyed to B. F. Ruff 3,954 acres of land in Raleigh county, West Virginia. Shortly afterwards Ruff sold the land to J. C. Williams. Williams gave to Ruff six promissory notes of $1,000 each, payable in periods of from one to four years. Ruff gave five of these notes to Craft and retained one of them himself, having sold the land to Wil-liams for $6,000, being $1,000 more than he bought it for from Craft.

NOTE.—Mere silence by the defendant as to an existing fact is ordinarily insufficient to entitle plaintiff to recover in an action for deceit. Bokee v. Walker, 14 Pa. 139. But a concealment of a fact by one giving information, upon which he knows the plaintiff intends to act, may be enough (Rheem v. Naugatuck Wheel Co. 33 Pa. 358; Boyd v. Browne, 6 Pa. 310; Croyle v. Moses, 90 Pa. 250, 35 Am. Rep. 654) ; or if there has been a false representation in addition to concealment (Cornelius v. Molloy, 7 Pa. 293). As to when silence constitutes fraud, see editorial note to Jackson v. Combs, 1 L. R. A. 742.

On April 2, 1875, Williams executed a deed of trust to one Gillespie to secure the payment of the six notes. In this deed it is stated that all the notes were held by C. C. Craft. In September, 1876, Williams and Samuel Phillips made an arrangement for an exchange, Phillips to transfer his interest in a certain mill property in Mercer County, Pennsylvania, for 968 acres of the West Virginia land. On September 30, 1876, Williams conveyed the 968 acres to Phillips. On October 21, 1876, C. C. Craft executed the following release:

Know all men by these presents, that I, C. C. Craft, of Chartiers township, county of Allegheny and state of Pennsylvania, for value received, do hereby release from encumbrance and deed of trust all that certain tract of land situate in Raleigh County, West Va., containing 968 acres, being the same what J. C. Williams, of Pittsburgh, Pennsylvania, by deed dated September 30, 1876, granted and conveyed to Samuel Phillips, of Hickory township, Mercer county, Pennsylvania, recorded in Deed Book D, pages 277, 278, and 279.

Witness my hand and seal this 21st October, A. D. 1876.

Attest:                               Chas. C. Craft.

Andrew Hurbet.

Craft testified as follows, as to the circumstances connected with the execution of the release:

Mr. Williams told me that he was about to make an exchange of another piece of this property for a mill property in Mercer county, this state, and asked me if I would release the property to be embraced in this next sale if he would give me security which was as good as that or better. I told him I didn't like to do it; I would prefer, I said, to have my present security, but finally consented to do it. He came to me again, or somebody brought the release to me, and I objected to the shape the thing was in at that time because I wasn't certain that the property which he offered to give me in exchange was clear of all encumbrance; then, as I understood, when Mr. Williams came back, or the last time he came to see me about it, he told me that the sale had been negotiated or arranged, and this release was brought to me in its present shape. The release states that the property had been sold, but I was not satisfied at that time and I had written to Mr. Griffith, in Mercer, an account of the affair,

asking him to see in my behalf whether Mr. Williams's judg-
ment bond, which he offered me in exchange for the release, was
a first lien on the mill property which he was giving, and I was
informed that it was not; that there was some little lien inter-
vened between that and the judgment bond, and I refused to
send this release until I understood that that property was free,
and that accounts for this intervening delay. I didn't know
anything at all about Mr. Williams's transactions with these
other parties; I had no other knowledge of it than what is con-
veyed in this release itself; I simply held out on this release un-
til I was satisfied that that property was free from all encum-
brance, and when it was, which it appears it was on the 21st of
October, I signed this paper.

At the time the release was executed by Craft two of the notes
were held by national banks in Pittsburgh. One of these notes
was the one which had been retained by Ruff, the other, one that
had been previously sold by Craft.

In 1879 the holders of these notes obtained judgment on them
in West Virginia and sold the whole 3,954 acres. The plain-
tiff, Phillips, averred that he had to pay some $1,150, in order
to perfect his title and secure the property. The defendant
claimed, on the strength of the testimony of Williams, who was
called for the plaintiff, that Phillips understood that Craft re-
leased only for the notes which he held and that he (Phillips)
was satisfied to take the property in that way.

The portion of Williams's testimony which bore on this point
was as follows:

*Q.* Was not the talk (with Phillips) substantially that the re-
lease from Mr. Craft as to what notes he held would be satisfac-
tory to him?

*A.* Yes, sir.

*Q.* That the other property was abundant to secure the other
two notes, was it not, after the sale to Mr. Phillips?

*A.* It certainly ought to be more than that.

*Q.* Was the understanding between you and Mr. Phillips at
the time that that property was sufficient security for the other
notes, and that this release from Mr. Craft would be satisfactory
to them?

*A.* That Mr. Craft released for himself; for his two notes.

The defendants presented, *inter alia,* the following points:

1. That under all the evidence the jury should find for the defendant.

*Ans.* Refused. [1]

2. That the plaintiff was guilty of such negligence as excludes him from recovery under the evidence.

*Ans.* Refused. [2]

4. The release itself shows that it was executed by Craft, in the belief that the sale had been consummated several weeks before and it gave explicit notice to the plaintiff that it had been executed in that belief; and the plaintiff had no right to receive and act upon it, under the circumstances alleged by him, without first making known to Craft the fact of the misrepresentations, upon faith in which it had evidently been executed.

*Ans.* Refused. [4]

7. That Craft, being shown not to have been cognizant of the transaction between Williams and the plaintiff—further than what is contained in the release—is to be regarded as releasing after plaintiff had his deed; and in such case the release did the plaintiff no harm and he cannot recover.

*Ans.* Refused. [5]

5. The plaintiff's claim rests upon the ground of the injury done him by Craft's release, as inducing him to consummate the purchase of the J. C. Williams land in Virginia, while the release upon its face notified the plaintiff that it was signed in the belief that the purchase had been consummated nearly a month before. Under such circumstances the grounds of the alleged injury fails, and the plaintiff cannot recover without showing that Craft had knowledge that the purchase had not been consummated; and of this the only evidence is to the contrary.

*Ans.* Refused. [6]

3. The plaintiff's silence towards the defendant, respecting the recitals in the release, to the effect that the sale and purchase had already been consummated, was virtually an affirmation by the plaintiff, of the misrepresentations in the release; and he cannot set up any complaint against Craft, founded upon facts in conflict with those representations; and, his case being founded upon such facts and dependent thereon, he cannot recover.

*Ans.* Refused. [7]

The plaintiff presented, *inter alia,* the following point:

2. If you find plaintiff without notice that C. C. Craft was

not the owner of the notes in the trust deed mentioned, and on which the lands in West Virginia were sold from him, and without knowledge of facts to put him on inquiry, and took the land so released, and trusting to the solemn and sacred silence of C. C. Craft, in evidence, in the hands of J. C. Williams, and upon the strength of it, parted with his own land, and without any fault on plaintiff's part—then plaintiff is entitled to recover the amount he necessarily had to pay to get his land back at the foreclosure sale on the notes C. C. Craft did not own.

*Ans.* This point is affirmed if the jury find the facts as assumed in this point.   [3]

Verdict and judgment for plaintiff, for $945.

The assignments of error specified: 1, 2 and 4–7, the answers to defendant's points; and 3, the answer to plaintiff's point.

*M. A. Woodward* for plaintiff in error.

*N. W. Shafer* for defendant in error.

OPINION BY MR. JUSTICE STERRETT:

This case was fairly submitted to the jury on questions of fact properly raised by the evidence.   There is nothing in either of the specifications of which plaintiff in error has any just reason to complain.   If there was any error in the proceedings, it was on the part of the jury in finding the facts against him.

Judgment affirmed.